IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAR BOYKINS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 16-985 |
| SEPTA, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

In this action, Plaintiff Jamar Boykins ("Boykins") asserts claims for race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 et seq., and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951-63, against his employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"). SEPTA has moved for summary judgment on all claims. (Doc. No. 22). For the reasons that follow, SEPTA's Motion will be granted.

### I. FACTUAL BACKGROUND

Boykins has been employed by SEPTA as an electrician since December 12, 1998. Defendant's Statement of Uncontested Material Facts ¶ 1 [hereinafter "Def.'s Facts"]; Plaintiff's Responses to Defendant's Statement of Uncontested Material Facts ¶ 1 [hereinafter "Pl.'s Resp. Facts"].[1] He is an African-American. Complaint (Doc. No. 1) ¶ 9. Boykins currently serves as a first-class electrician in SEPTA's Bridges and Building Department of its Railroad Division.

---

[1] This statement of facts is drawn primarily from the uncontested portions of the parties' statements of undisputed material facts. Where facts are contested, references will be to the evidence submitted in support of and in opposition to the present Motion.

Def.'s Facts ¶¶ 3-4; Pl.'s Resp. Facts ¶¶ 3-4. SEPTA's Building and Bridges Department has two sub-departments: Maintenance and Construction. Def.'s Facts ¶ 5; Pl.'s Resp. Facts ¶ 5. The Maintenance Department is tasked with preventative maintenance and repair of stations, shops and any facilities on the regional railroad. Def.'s Facts ¶ 5; Pl.'s Resp. Facts ¶ 5. The Construction Department is tasked with new construction or construction that would be greater than a maintenance project. Def.'s Facts ¶ 5; Pl.'s Resp. Facts ¶ 5. Boykins is employed in the Maintenance Department. See Def.'s Facts ¶ 8; Pl.'s Resp. Facts ¶ 8. At the time relevant to the events at issue here, Gerald McGovern ("McGovern") was the Assistant Director in charge of the Maintenance Department in which Boykins worked. See Def.'s Facts ¶¶ 6-8; Pl.'s Resp. Facts ¶¶ 6-8. McGovern became Assistant Director in either 2005 or 2006. Pl.'s Br. Ex. F, at 13 [hereinafter "McGovern Dep."]. In 2013, three maintenance managers reported to McGovern. See id. at 12-13. Each of those maintenance managers was Caucasian. Pl.'s Resp. Facts ¶ 7; McGovern Dep. at 12-16, 52-53.

Under SEPTA's Employment, Hiring, Promotion and Transfer Procedures Manual, job descriptions for vacancies are prepared by the manager or supervisor who is seeking to have a job filled (the "Hiring Manager") with the concurrence of a representative of the Human Resources Department (the "Recruiter"). Plaintiff's Concise Statement of Disputed Material Facts (Doc. No. 29-2) ¶ 33 [hereinafter "Pl.'s SDF"]; Pl's Br. Ex. P-3, at 2. SEPTA's procedures call for the Recruiter to conduct an initial screening of applications to determine which applicants are minimally qualified and for the Hiring Manager to select interviewees from those minimally-qualified applicants. Pl.'s SDF ¶ 33; Pl.'s Br. Ex. P-3, at 2. Interviews are conducted by a panel of two to five interviewers. Def.'s Facts ¶ 13; Pl.'s Br. Ex. P-3, at 4. The panel members "should be diverse." Pl.'s Br. Ex. P-3, at 4. Prior to the interview, the Hiring Manager,

in conjunction with the Recruiter, prepares questions that must be the same for all interviewees, as well as recommended responses to those questions. Id. "The recommended responses should serve as a guide in evaluating candidates' answers." Id. The interview panel members are to determine applicants' suitability for the position "based on [the] individual's qualifications and experience, which can be assessed from responses to the questions." Id. Each interviewer is to complete an Employment Evaluation Form, ranking the applicants. Id. at 5. At the conclusion of the interviews the individual panel members' rankings are to be combined by the Hiring Manager, and the candidate with the highest combined rating is to be offered the position. Id.

Boykins applied for a number of positions as a maintenance manager between 2013 and 2015. He bases his claim of racial discrimination on SEPTA's failure to promote him to the position of maintenance manager in the Maintenance Department of the Railroad Division, position #14-110-EMC and failure to interview him for the positions of maintenance manager in the Maintenance Department, position #14-260-EMC, and maintenance manager in the Construction Department of the Bridges and Building Division, position #15-071-EMC. Pl.'s Br. at 1. He also contends that SEPTA failed to interview him for positions #14-260-EMC and #15-071-EMC in retaliation for his having filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Id.

## II. SUMMARY JUDGMENT STANDARD

Under the well-established summary judgment standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law.'" Williams v. Wells Fargo Bank, No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. Apr. 9, 2015) (quoting Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012)).

> [T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his or] her case with respect to which [he or] she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"By its very terms, this standard [that there be no genuine issue as to any material fact] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A material fact is one that "might affect the outcome of the suit under the governing law." Id. at 248.

When ruling on a motion for summary judgment, the court shall consider facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006). To prevail on summary judgment, however, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-moving party].'" Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013) (quoting Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)); see also Anderson, 477 U.S. at 252.

4

## III. DISCUSSION

### A. Boykins Has Failed to Meet His Burden to Survive Summary Judgment on His Discrimination Claims

Title VII racial discrimination claims are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2] Under that framework, a plaintiff's initial burden is to establish a prima facie case, by showing that he or she: (1) belongs to a protected class; (2) was qualified for the position; (3) suffered some form of adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. Id. If a plaintiff makes out a prima facie case the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Paradisis v. Englewood Hosp. Med. Ctr., ___ F. App'x ___, No. 16-3616, 2017 WL 728688, at *4 (3d Cir. Feb. 24, 2017) (citing Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995)). "If the defendant is able to articulate such a reason, the burden shifts back to the plaintiff, who must demonstrate that the employer's proffered reasons were merely a pretext for intentional discrimination." Id. (citing McDonnell Douglas, 411 U.S. at 804). At that point, the plaintiff "must point to evidence which: (1) 'casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication;' or (2) allows the factfinder to reasonably conclude that 'discrimination was more likely than not a motivating or

---

[2] "It is well-settled that claims under Title VII and the PHRA [the Pennsylvania Human Relations Act] are analyzed under the same general framework at the summary judgment stage." Epps v. First Energy Nuclear Operating Co., No. CIV. A. 11-1462, 2013 WL 1216858, at *17 (W.D. Pa. Mar. 25, 2013) (citing Dellapenna v. Tredyffrin/Easttown Sch. Dist., 449 F. App'x 209, 213 n.2 (3d Cir. 2011)). Boykins does not argue that Pennsylvania law provides him with any different arguments or applies any standard different from those governing Title VII claims. Accordingly, Boykins's PHRA claims will not be discussed separately from his Title VII claims.

5

determinative cause of the adverse employment action.' . . . A plaintiff can demonstrate the latter by 'showing that the employer in the past had subjected him [or her] to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his [or her] protected class more favorably, or that the employer has discriminated against other members of his [or her] protected class or other protected categories of persons.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994)).

A plaintiff's subjective belief that race played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination. Wilson v. Blockbuster, Inc., 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008) (citing Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000)). Instead,

> "[t]o discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence."

Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108–09 (3d Cir. 1997) (quoting Fuentes, 32 F.3d at 765). "[T]he plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [discrimination] was a motivating or determinative factor in the employment decision." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir.1998). "For example, the plaintiff may show that the employer has previously discriminated against [him or] her, that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Id. at 645 (citing Fuentes, 32 F.3d at 765).

6

Here, Boykins asserts that he was qualified for maintenance manager position #14-110-EMC and that SEPTA instead hired a less qualified white applicant. Pl.'s Br. at 3-4. For the purposes of the present motion, SEPTA does not dispute that Boykins has established a prima facie case regarding this position. Def.'s Br. at 13-14. Instead, it contends that it did not promote Boykins to the position because he was not the most qualified applicant. Id. at 14-16. SEPTA established a three-person panel of interviewers for position #14-110-EMC, consisting of the Hiring Manager for the position, McGovern, a SEPTA Recruiter, John Broughton, and a SEPTA Affirmative Action Officer, Melissa Cooper. Def.'s Facts ¶ 33. All three interviewers were Caucasian. Pl.'s Resp. Facts ¶ 36. Boykins applied for and was selected to interview for the position. Id. ¶ 34; Def's Facts ¶ 34. Each candidate was asked the same 10 questions. Def.'s Facts ¶ 36; see McGovern Dep. at 54-74; Pl.'s Br. Exs. P-44 to -46. The interviewers gave the applicants numerical ratings for their responses to each of the questions and then created a total score for each candidate. See Pl.'s Br. Exs. P-44 to -46; Def's Br. Ex. 19. They then ranked the candidates in order based on the total scores given to their responses to the 10 interview questions. Def.'s Br. Ex. 19. At the conclusion of all the interviews for the position, the interviewers filled out a SEPTA Consensus Panel Ranking and Employment Evaluation Form on which they combined the scores given to each candidate by each of the three interviewers and then ranked the candidates in order based on their total combined scores. Id. Boykins finished seventh of the 11 candidates. Id. The candidate who ranked first, James Schneider ("Schneider"), who is Caucasian, was given the position. See id.; Def.'s Facts ¶¶ 39-40; Pl.'s Resp. Facts ¶¶ 39-40.

SEPTA contends that Schneider was better qualified than Boykins based on their relative experience in construction. Reply (Doc. No. 32) at 6. The first of the 10 interview questions

7

asked of all applicants reflected that construction experience would be a major consideration in selecting a candidate for the position:

> 1. The posting for this position is titled Maintenance Manager, however; we are looking for someone with a strong background in Construction. Please describe your education, training, and experience as they relate to the Construction Industry. Tell us about some of the projects you have worked on and what type of supervisory experience you have. And finally why do you feel you are the most qualified for this position?

Pl.'s Br. Ex. P-44, at 2. Schneider had training in civil engineering at Drexel University, although he did not obtain a degree. Def.'s Br. Ex. 22, at 1. He had five years' experience as a carpenter/locksmith first class in SEPTA's Buildings and Bridges Department, during which he "performed carpentry in all phases of construction and maintenance of stations and car shops" and had served as a "backfill" manager. Id. at 2. Schneider served as the employee in charge for outside contractors. Id. Prior to joining SEPTA, Schneider owned and operated his own construction company for six years, performing residential and commercial remodeling. Id. In that position, he supervised contractors. Def.'s Facts ¶ 45; Pl.'s Resp. Facts ¶ 45; Def's Br. Ex. 22. Schneider also worked for six years as a project manager and foreman for a company that performed residential and commercial remodeling. Def.'s Br. Ex. 22. In that position, he managed projects from start to finish and supervised multiple crews of employees. Id. In addition, Schneider had seven years' experience as a lead carpenter. Id.

In contrast, Boykins graduated from a vocational technical high school with a concentration in electrical construction. Pl.'s Br. Ex. P-6, at 2. He obtained a diploma in residential and commercial electricity from Orleans Technical Institute. Id. At the time of his application, Boykins had worked at SEPTA as an electrician in SEPTA's Buildings and Bridges Department's Maintenance Department for 15 years. Id. at 1, 3. His resume described his work at SEPTA as: "Installation, Maintenance, Repair and Test of Electrical Equipment within Rail

8

Road Facilities." Id. at 2. His resume did not reflect any work experience in construction or in trades other than as an electrician. Id.

In light of these facts, SEPTA has more than met its burden to articulate a legitimate, nondiscriminatory reason for its decision not to promote Boykins to position #14-110-EMC. It has established that he lacked the relevant credentials in construction that were required for the position. The burden thus falls upon Boykins to "demonstrate that the employer's proffered reasons were merely a pretext for intentional discrimination." Paradisis, 2017 WL 728688, at *4 (citing McDonnell Douglas, 411 U.S. at 804).

Boykins argues that SEPTA's stated reasons for not promoting him are pretextual because he was better qualified for the position than Schneider, since he had worked at SEPTA for much longer than Schneider had. Pl.'s Br. at 4. However, SEPTA's proffered explanation that, in hiring a manager for a construction-related position, SEPTA valued Schneider's extensive construction experience over Boykins's 15 years' experience as a SEPTA employee, is not objectively unreasonable. It does not "'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that a jury reasonably could find that reason pretextual. Keller, 130 F.3d at 1108–09 (quoting Fuentes, 32 F.3d at 765).

Boykins next attempts to show that a jury could conclude that discrimination was more likely than not a motivating or determinative cause of SEPTA's decision not to promote him to position #14-110-EMC. He focuses his arguments on the premise that McGovern, the Hiring Manager for the position, was motivated by prejudice. See Pl.'s Br. at 10-11. Boykins first argues that he can show past discrimination by McGovern because McGovern had "a history of only promoting Caucasian workers to maintenance manager positions in the department." Id. at 10. The evidence reflects, however, that prior to the hiring for position #14-110-EMC,

9

McGovern had only hired one person as a maintenance manager. McGovern Dep. at 12-15. That does not provide a statistically significant sample sufficient to show prior discrimination. Burns v. Potter, No. CIV. A. 1:04CV2793, 2007 WL 406201, at *5 (M.D. Pa. Feb. 2, 2007); Khair v. Campbell Soup Co., 893 F. Supp. 316, 334 n.18 (D.N.J. 1995); Shieh v. Lyng, 710 F. Supp. 1024, 1033 (E.D. Pa. 1989), aff'd, 897 F.2d 523 (3d Cir. 1990). Moreover, the race of prior persons promoted is meaningless without evidence regarding whether African-American applicants were denied the promotion or the relative qualifications of the applicants. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 543 (3d Cir. 1993).[3]

Boykins further contends that McGovern violated SEPTA's promotional policies and procedures by interviewing applicants who did not meet the minimum qualifications for the position. Pl.'s Br. at 10-11. McGovern testified that he "offered an interview to the majority of the people from bridges and buildings department who applied for this position whether they were qualified or not so that they could . . . understand the interview process," and so that he could learn their qualifications. McGovern Dep. at 44. Given that Boykins was offered an interview and that, as discussed above, the applicant chosen was qualified and was rated the highest by all three panel members, Def.'s Br. Ex. 19, the fact that McGovern chose to grant interviews to additional candidates who were not qualified does not logically create any inference of discriminatory motive.

Boykins claims, moreover, that McGovern violated SEPTA policy by forming an all-Caucasian interview panel. He bases his argument that such a panel violated SEPTA policy on a

---

[3] Moreover, to the extent Boykins attempts to look beyond McGovern's department to find a pattern of discrimination, the evidence is unchallenged that as of January 2015, the overall distribution of minorities among management throughout SEPTA was 41%. Def.'s Facts ¶ 48;

(Footnote continued on next page.)

statement in the deposition of an Affirmative Action Officer, Carol O'Neal ("O'Neal"), that, generally, after selecting the candidates to be interviewed, she and the Hiring Manager would "talk about whether or not if there is a[n affirmative action] goal in a position to make sure that the panel is representative of the goal." Pl.'s Br. at 11. In addition, SEPTA's policies and procedures manual states that panel members "should be diverse." Id. Ex. P-3, at 4. The policies and procedures manual does not articulate a definitive requirement for a diverse interview panel, and O'Neal's statement does not establish that SEPTA followed any such definitive policy in other hiring processes. Moreover, the mere fact that a single interview panel for a single SEPTA position was all Caucasian does not alone create an inference of discriminatory intent. It is shear speculation to believe that Caucasian panelists necessarily were biased against African-American applicants based solely on their race. See Carr v. New Jersey, No. 9-913, 2012 WL 3757028, at *4 (D.N.J. Aug. 28, 2012), aff'd, 534 F. App'x 149 (3d Cir. 2013). "Although the race and/or gender of the individual(s) responsible for a hiring decision is certainly relevant, it is insufficient to establish a prima facie case of discrimination without more." Iadimarco v. Runyon, 190 F.3d 151, 156 (3d Cir. 1999).

Furthermore, Boykins has not alleged that the two panel members other than McGovern were motivated by discriminatory animus. Yet, all three panel members rated him between fifth and tenth place among the candidates, and it was McGovern who gave Boykins the highest ranking of fifth.[4] Def.'s Br. Ex. 19, at 2. All three panel members ranked Schneider as first.

---

see Pl.'s Resp. Facts ¶ 48.

[4] The Consensus Panel Ranking Form for the interviews indicates that McGovern ranked Boykins tenth while Melissa Cooper ranked him fifth. Def.'s Br. Ex. 19, at 1. McGovern's and Cooper's individual Employment Evaluation Forms, however, show that the rankings were the reverse. Id. at 2, 4.

11

Def.'s Br. Ex. 19. Moreover, Boykins has not submitted evidence that could reasonably lead a jury to believe that McGovern was racially biased. As discussed above, Boykins's belief that McGovern had a discriminatory animus against African-Americans because of his purported history of promoting only white people is groundless. In fact, McGovern was the Hiring Manager for another position for which Boykins claims discriminatory failure to promote him, position #15-071-EMC, and in that instance, McGovern selected an African-American for the promotion.[5] Def.'s Facts ¶¶ 81, 84; see Pl.'s Resp. Facts ¶ 81, 84.

Based on his groundless assertion that McGovern was prejudiced, Boykins asserts that "**McGovern inserted his own prejudicial motives in scoring plaintiff as compared to his preferred candidate.**" Pl.'s Br. at 11 (emphasis in original). Boykins claims that McGovern did this by scoring his answers to the interview questions using his own subjective opinions rather than doing so based on the suggested answers to the questions that were prepared before the interview. Id. His support for that argument is that the notes that McGovern took during the interviews did not fully document each interviewee's responses to each of the questions and that McGovern stated in his deposition that the numerical score he assigned for each question represented his own "interpretation of [the candidate's] answers." Pl.'s Br. at 11; see McGovern Dep. at 57. McGovern further explained, however, that the recommended responses that he had prepared prior to the interview were merely suggested responses and not required responses. Id. at 58. He assigned a score based on his subjective assessment of how well the interviewee's answers covered the points that he was looking for. See id.

---

[5] SEPTA also hired an African-American to another of the eight positions that Boykins asserts that he applied for but was not given for discriminatory reasons, position #14-260-EMC. Def.'s Facts ¶ 53; see Pl.'s Resp. Facts ¶ 53; Def.'s Br. Ex. 35.

The question that spurred this colloquy at McGovern's deposition was question number one regarding construction industry experience that is quoted above. The suggested answer to the question was:

> Candidate should reveal formal education, trade school, apprenticeship and other types of construction training. Demonstrate a thorough knowledge of construction practices, their supervisory experiences as related to the construction industry, description of some of the projects they have worked on and a thorough understanding of the position.

Pl.'s Br. Ex. P-44, at 2. Boykins does not explain how an interviewer could assign a numeric score to a candidate's response based on the suggested answer without applying some subjective judgment. The score necessarily is based on a subjective evaluation of the responses that is guided by the suggested answer. Thus, to say that "McGovern inserted his own [allegedly] prejudicial motives in scoring" Boykins merely because he recorded his subjective judgment of how well Boykins's response covered the points that McGovern had included in the suggested answer provides no evidence of a discriminatory motive.

Boykins also argues that he can establish discriminatory motive by showing that SEPTA engaged in additional discriminatory promotion activity after it denied him the promotion to position #14-110-EMC. Pl.'s Br. at 13. Specifically, he contends that SEPTA demonstrated its discriminatory motivation by not selecting him to interview for two other positions that he applied for subsequently: positions #14-260-EMC and #15-071-EMC. See id. at 6-7, 14, 16-17.

Boykins asserts that he met the qualification requirements for position #14-260-EMC. Id. at 6; Pl.'s SDF ¶ 15. Because McGovern was not the Hiring Manager for position #14-260-EMC, see Def.'s Br. Ex. 31, it is difficult to see how Boykins's rejection for that position is evidence of McGovern's alleged discriminatory intent. Moreover, the posting for that position listed as a requirement: "supervise force account construction projects in the following trades carpentry, plumbing, masonry, painting, welding, electrical, HVAC and all related job site and/or

project trades." Def.'s Br. Ex. 32, at 2. Boykins resume did not reflect that he had work experience in disciplines other than as an electrician. Pl.'s Br. Ex. P-6. The Prospective Employee Processing form for that position indicates that the Hiring Manager for that position denied Boykins an interview because he "lack[ed] relevant experience." Id. Boykins challenges the determination that he lacked relevant experience solely on the basis of his own deposition testimony in which he stated that he did have experience in force account construction in the "electrical trade and some HVAC." Def.'s Br. Ex. 5, at 108. He acknowledged in his deposition, however, that he did not have such experience in any of the other trades listed in the position posting. Id. Thus, Boykins has failed to establish the basic element of his prima facie case that he was qualified for the position for which he claims he was rejected because of discrimination, see McDonnell Douglas, 411 U.S. at 802, let alone that SEPTA's reasons for not selecting him for an interview were pretextual. His rejection for position #14-260-EMC provides no evidence of subsequent discriminatory conduct.

As for position #15-071-EMC, the candidate who was selected for that position was African-American. Def.'s Facts ¶ 85; Def's Br. Ex. 55; see Pl.'s Resp. Facts ¶ 85. Boykins, therefore, cannot demonstrate that he was not selected to interview for the position because of racial discrimination. See Schiedemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) (plaintiff asserting failure to promote claim must show that a person who is not in the protected class was treated more favorably).

Thus, just as Boykins has failed to demonstrate any genuine issue of pretext, he also has failed to point to any evidence on which a jury reasonably could conclude that discrimination was more likely than not a motivating or determinative cause of SEPTA's decision not to

14

promote him. Accordingly, he has failed to satisfy his burden, and his racial discrimination claims cannot survive summary judgment.

### B. SEPTA Is Entitled to Summary Judgment on Boykins's Retaliation Claims

Boykins claims that SEPTA retaliated against him because he filed an internal complaint and a complaint with the EEOC in October 2014. He alleges the following seven instances of retaliatory conduct: (1) he was not selected to be interviewed for position #14-260-EMC; (2) he was not selected to be interviewed for position #15-071-EMC; (3) McGovern did not grant his requests to receive NORAC training;[6] (4) on one occasion in October 2014, SEPTA's Chief Engineer of the Engineering, Maintenance and Construction Department yelled at him and pointed his finger in his face, making contact with his face; (5) on one occasion an employee of SEPTA's Inspector General's Department allegedly followed him as he drove from one SEPTA facility to another; (6) in 2016, his supervisor required him to fill out an incident report for a 2013 car accident; and (7) on one occasion in May 2015, McGovern "got real hostile with [Boykins] as he proceeded to tell [Boykins] to put his vest on." Def.'s Ex. 5, at 190. See Pl.'s Br. at 16-22.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) [he or] she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him or] her; and (3) there was a causal connection between [his or] her participation in the protected activity and the adverse employment action.'" Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala

---

[6] NORAC stands for Northeast Operating Rules Advisory Committee, which is a committee formed by numerous railroads to establish common rules for the operation of the railroads. See Northeast Operating Rules Committee, NORAC Operating Rules, 3 (10th ed. 2011), *available at*

(Footnote continued on next page.)

15

Coll., 51 F.3d 383, 386 (3d Cir.1995)). To qualify as an adverse employment action, retaliatory conduct must be such that it "'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Moore, 461 F.3d at 341 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006)). The third element of the test requires proof of "but-for" causation. Univ. of Texas Sw. Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 2533 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id.

      The most glaring deficiency in Boykins's claims for failure to interview him for the two positions listed is that he cannot raise a genuine issue of fact regarding whether the SEPTA personnel that made the interview decisions actually knew at the time that Boykins had filed a charge of discrimination. Boykins's sole basis for his claim that they did know about his discrimination charge is a memo that the Director of the EEO/AA, Employee Relations Department sent to the Director of the Maintenance Department—McGovern's supervisor—as well as to other senior SEPTA officials, informing them that Boykins had filed his complaint with the EEOC. Pl.'s Br. Ex. P-37. The memo directs that: "[i]f [Boykins] is presently employed by the Authority, contact the EEO/AA/ER staff member prior to any changes in his/her employment status." Id. Boykins infers that the Director of the Maintenance Department informed the Hiring Managers for the two positions listed above about Boykins's charge. Pl.'s Br. at 17. He makes this assumption despite the fact that the memo was addressed only to

---

http://www.hubdiv.org/docs/signaling/NORAC.pdf.

personnel who were senior to the Hiring Managers and bore the following instructions in bold print:

> **NOTE: This notice and any other documentation pertaining to the EEO/AA/ER Department's processing of [Boykins's] complaint SHOULD NOT be included in the employee's personnel or work record. Additionally the complaint should not be a matter of discussion except when assisting the EEO/AA/ER Department in the investigative process.**

Pl.'s Br. Ex. P-37 (emphasis in original).

McGovern, who was the Hiring Manager for position #15-0571-EMC, testified that he did not know that Boykins had filed a charge at the time he decided not to interview him for the position. McGovern Dep. at 38-42. Stephen Kish, who was the Hiring Manager for position #14-260-EMC also testified that he had not been informed of Boykins's charge at the time he decided not to interview him for the position. See Def.'s Br. Ex. 11, at 72-75. Boykins's assertion that McGovern and Kish knew about Boykins's charge merely because their superiors had been informed of it is nothing but speculation. Speculation is not adequate to establish a genuine issue of fact to prevent summary judgment. Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999); Carvalho v. Aircraft Serv. Int'l, Inc., No. CIV. A. 12-2430 JLL, 2013 WL 5567164, at *7 (D.N.J. Oct. 8, 2013).

Moreover, even if Boykins could establish that McGovern and Kish knew that he had filed a discrimination charge, his claims of retaliatory conduct are insufficient to meet his burden. As discussed supra in Section III(A), Boykins's application showed that he did not possess the requisite experience to qualify for position #14-260-EMC. As a result, he cannot demonstrate that he would have been granted an interview but for the fact that he filed his discrimination complaint. Similarly, the posting for position #15-071-EMC specified that to be qualified, an applicant "[m]ust have extensive experience in all aspects of welding, blue print reading, fabrication of structural steel components, rebar installation and rigging. Must have

17

experience in bridge construction and repair and catenary construction, maintenance and inspection." Def.'s Br. Ex. 39, at 2. Boykins's resume did not reflect that he met those requirements.[7] See Pl.'s Br. Ex. P-6.

Boykins asserts that he was denied NORAC training in retaliation for his discrimination charge. Pl.'s Br. at 17-18. The denial of training can constitute retaliation if the training would "contribute[] significantly to the employee's professional advancement." Burlington, 548 U.S. at 57. Boykins has presented evidence that shows only that one position that he applied for required a NORAC certification—position #15-071-EMC—and that he was not otherwise qualified for that position. He has presented no evidence that there were positions that he would have been qualified for if he had a NORAC certification. Moreover, maintenance managers—the positions Boykins applied for—in the Bridges and Buildings Department are not required to have NORAC certifications. Thus, he has not presented evidence to establish that obtaining NORAC certification would have significantly advanced his career. McGovern testified that within the Bridges and Building Department, only welders, carpenters and masons, as well as

---

[7] Boykins attempts to show that he was qualified for the position by pointing to his deposition testimony that he had "some" experience in some of the listed trades. Pl.'s Br. at 17; see Def.'s Br. Ex. 5, at 149-50 (Boykins Deposition). McGovern made the decision that Boykins was not qualified based on his resume, not on his deposition testimony given years later. Boykins's argument that McGovern changed the initial form job description to include a NORAC certification requirement with the specific intent to exclude him from consideration rests entirely on hearsay. See Def.'s Br. Ex. 5, at 151-55. Hearsay evidence can only be considered on summary judgment if the party presenting it explains how it will present the evidence at trial in an admissible form. See Fraternal Order of Police, Lodge 1 v. Camden, 824 F.3d 231, 238 (3d Cir. 2016). Boykins has not attempted such an explanation. Also, Boykins's statement that the "only difference" between position #14-110-EMC, for which he was granted an interview, and position #15-071-EMC, for which he was not, is that the latter position required NORAC certification, Pl.'s SDF ¶ 19, is simply false. The experience requirement quoted above was not included in position #14-110-EMC. See Def.'s Ex. 18, at 2. Moreover, the NORAC certification requirement is irrelevant because Boykins could not meet the other requirements of

(Footnote continued on next page.)

18

their helpers, were required to have NORAC certification. McGovern Dep. at 24. Boykins was an electrician. McGovern further testified that positions in NORAC training sessions were limited and that preference for those sessions was given to employees whose positions required that certification. Id. at 21-22. Boykins has failed to produce any evidence to show that McGovern's explanation was pretextual.[8]

As for Boykin's other allegations of retaliatory conduct, they do not constitute the type of adverse employment action necessary to show retaliation. Boykins's contention that he was followed once by an SEPTA Inspector General's office employee is insufficient. Boykins does not allege that SEPTA took any action against him as the result of the alleged surveillance. "Without negative consequences, [an] investigation alone is not an adverse employment action. Rosati v. Colello, 94 F. Supp. 3d 704, 714 (E.D. Pa. 2015); see also Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015) (holding that, even when an employee is placed on paid administrative leave during an investigation, that investigation does not amount to an adverse employment action for Title VII purposes). Similarly, two incidents over two years in which a superior yelled at him and being forced to fill out an allegedly unnecessary accident report form are the type of de minimis incidents that cannot support a retaliation claim. See Suppan v. Dadonna, 203 F.3d 228, 234-35 (3d Cir. 2000). "Courts have declined to find adverse action where the 'alleged retaliatory acts were criticism, false accusations or verbal reprimands.'" Revell v. Jersey City, 394 F. App'x 903, 906 (3d Cir. 2010) (quoting Brennan v. Norton, 350

---

the position.

[8] Boykins alleges that other electricians in McGovern's department were given NORAC training. Pl.'s SDF ¶ 56. His only citation to support that allegation, however, is to his counsel's own statements made to a witness in deposition questioning. Id. The witness denied knowing whether counsel's statements were accurate. See Pl.'s Br. Ex. D, at 17-20.

19

F.3d 399, 419 (3d Cir. 2003)). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington, 548 U.S. at 68.

## IV. CONCLUSION

For the reasons discussed above, Boykins has failed to raise a genuine issue of material fact regarding whether he can meet his evidentiary burden to establish either racial discrimination or retaliation and consequently, SEPTA is entitled to summary judgment. An appropriate Order follows.

Dated: April 13, 2017

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE